(No. 40478.—

ROCKFORD CLUTCH DIVISION, BORG-WARNER CORPORATION, Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.* —(Howard Hayes, Appellant.)

*Opinion filed March 28, 1968.*

TUITE, SHAW, SREENAN & MORRISSEY, of Rockford, (ROBERT J. SHAW, of counsel,) for appellant.

Reno, Zahm, Folgate & Skolrood, of Rockford, (Ralph S. Zahm and Angus S. More, Jr., of counsel,) for appellee.

Mr. Justice Underwood delivered the opinion of the court:

Howard Hayes, an employee of Rockford Clutch Division, Borg-Warner Corporation, sought compensation for an injury claimed to have been incurred at work on September 1, 1964. An arbitrator awarded compensation based upon 4⅔ weeks of temporary total disability, finding no permanent disability had been sustained. On review the Commission awarded the same temporary total disability payments plus an additional 50 weeks compensation at $51 per week based upon its finding that claimant suffered permanent loss of use of 15% of the left leg and 10% of the right leg. On *certiorari* the Winebago County circuit court reversed and vacated the award. From that judgment this appeal was taken. The issue is the correctness of the trial court's finding that the Commission's decision was contrary to the manifest weight of the evidence.

Claimant testified he commenced work for the Rockford company on the day of the injury as a clutch inspector. His duties involved lifting the clutches from a "skid" to his work table, inspecting them in stacks of four and then placing them on another "skid". He stated that while bending over to put a stack of four, weighing a total of 25 lbs., on the skid "I had a sharp pain in my back and I dropped the clutches and I fell down." Claimant continued his work, but had pain in his back and legs. The following day a company nurse came to his home, and, after Hayes told her of the occurrence, called an ambulance which transported him to the hospital where he remained for ten days under the care of Dr. Halverson. Claimant received heat treatments and was given a brace for his back which he was still wearing, usually during working hours, at least several

days a week at the time of the hearing. Following release from the hospital claimant received daily physical therapy treatments at a clinic for about three weeks. He was released for light work about the first of October and resumed his former job for a period of four days and was then discharged.

Several weeks later claimant obtained employment as a turret lathe trainee with Ingersol Milling Machine Company. He worked there 8 or 9 hours and left, testifying the pain in his back and legs was such that he could not stand it. He then returned home to Tennessee where he worked at a filling station helping his father, but testified he couldn't stand the pain. He also worked several months as a census taker, and, at the time of the hearing, was steadily employed by Thermo-Dynamics adjusting valves on, or putting blowers or fans in, refrigerators. He further testified he can neither stand nor sit "too long" without getting severe pain in his back and the backs of his legs, and that he experiences a "numbness" in the legs; that the pain wakes him at night and he has to arise from bed; he cannot ride in a car or bus without getting up and walking around every 35 or 50 miles; that he cannot mow the lawn; that working on cars "bothers" him "real bad"; and that he cannot, because of the pain, straighten up when lifting weights of more than ten pounds. Claimant also testified his mother or a family member rubs his back once or twice a day and that he takes aspirin or similar pain alleviators.

Hayes made no complaint to his supervisor on September 1, and the foreman testified he noticed nothing unusual during his travels about the block-wide plant in a golf cart. Nor was claimant's testimony regarding the episode corroborated by a fellow employee who worked "next" to him although it is unclear as to how near to Hayes this employee worked.

Dr. Samuel R. Rubert, a specialist in orthopedics and industrial medicine, testified in claimant's behalf. He ex-

amined Hayes on March 25, 1965, at which time claimant was wearing a 15" heavy lumbosacral canvas corset with rigid, wide orthopedic back stays immobilizing his lower spine. The doctor found spasm of the lumbosacral, left lumboiliac and sciatic areas indicating irritation or pathological changes within the lower portion of the spine or supporting structures. The lumbar lordotic curve was somewhat flattened. He further testified to the presence of spasm resulting from various movements and tests and that there was accompanying limitation of movement in varying degrees. Dr. Rubert diagnosed claimant's condition as "strain injury changes and findings of the lumbar and lumbosacral spine, lumbosacral nerve root irritation, left leg sciatic radiculitis and sciatica, reflex spasm and right leg sciatica, with decompensation strain of the lumbar and lumbosacral spine and findings compatible with disc syndrome changes, but there were no discs demonstrable on the X-ray films." In the doctor's opinion claimant's condition was permanent and could be causally related to the September 1 work incident.

A report from the hospital's department of radiology stated X rays revealed a "normal lumbosacral spine aside from a lumbar tilt to the left and a transitional symmetrical fifth lumbar vertebra."

Dr. Eugene T. Leonard, an orthopedic specialist called by respondent, testified he examined claimant April 20, 1965, and found lateral bending of 5° in an erect position as compared to a normal 30°; lumbar spine flexion and hip flexion of 5° and 15° as opposed to norms of 25° and 80° respectively. Claimant, according to the doctor, stated he could not perform other requested tests such as standing on one leg, but was able to step up a 10" step with no outward indication of distress. Dr. Leonard made no diagnosis, but stated his belief that there was no anatomical reason why one who could walk could not lift a leg while standing still.

Respondent calls attention to the absence of any complaint by claimant on the evening of September 1, the fact that a fellow employee apparently working nearby was not produced to corroborate claimant's testimony, that claimant has seen no other doctor regarding his condition since returning to Tennessee, that he is now working a 40-hour week in a factory installing fans in refrigeration equipment, that a lumbosacral strain does not ordinarily produce permanent disability and that the medical testimony established that the flattening of the lordotic curve is not necessarily the result of trauma. In support of his argument that the Commission's decision is against the manifest weight of the evidence and the trial court thus was required to vacate the award, counsel for respondent cites the same cases relied upon in *Owens-Illinois Glass Company* v. *Industrial Com.*, post p. 312, decided this term. That case is similar, in many respects, to this and the governing principles of law are identical. We there distinguished the cases cited by respondent here and it would serve no useful purpose to now do so again.

Decisions of the Commission ought not to be, and may not be, reversed by the courts solely because we would have decided differently had the initial decision been ours to make. (*Farace* v. *Industrial Com.*, 34 Ill.2d 80, 84; *Bruno* v. *Industrial Com.*, 31 Ill.2d 447, 449.) It is possible, we suppose, as respondent implies, that claimant's testimony as to the injury at work and present disability is partially or largely fabrication, but on the record before us we do not believe it can fairly be said that the Commission's finding is contrary to the manifest weight of the evidence. *Moergen* v. *Industrial Com.*, 394 Ill. 383, 391.

The judgment of the Winnebago County circuit court is reversed and the award of the Commission reinstated.

*Judgment reversed; award reinstated.*